IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CLEOPATRA DE LEON, NICOLE DIMETMAN, VICTOR HOLMES, and MARK PHARISS<br><br>Plaintiffs,<br><br>v.<br><br>RICK PERRY, in his official capacity as Governor of the State of Texas, GREG ABBOTT, in his official capacity as Texas Attorney General, GERARD RICKHOFF, in his official capacity as Bexar County Clerk, and DAVID LAKEY, in his official capacity as Commissioner of the Texas Department of State Health Services<br><br>Defendants. | CIVIL ACTION NO. 5:13-cv-982 |

## PLAINTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Cleopatra De Leon, Nicole Dimetman, Victor ("Vic") Holmes, and Mark Phariss complain of Defendants and allege:

### I.     INTRODUCTION

1.     This suit seeks to redress a grave deprivation of constitutional rights that directly harms a discrete but substantial minority of United States citizens residing in the State of Texas. Any person has the legal right to marry another person of the opposite sex, but that right is denied to those citizens who wish to marry another person of the same sex. This unequal treatment of gay and lesbian citizens is based on longstanding prejudices, and it is repugnant to the United States Constitution. As the United States Supreme Court recently declared, "[t]he

Constitution's guarantee of equality 'must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *United States v. Windsor*, 133 S. Ct. 2675, 2693 (2013) (quoting *Dept. of Agric. v. Moreno*, 413 U.S. 528 (1973)). The constitutional guarantee of equality also protects against such disparate treatment when the desire to harm manifests itself in state legislation or state constitutional provisions.

2.  The "freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1, 12 (1967). Numerous Supreme Court cases recognize the important of marriage. It is "among associational rights this Court has ranked as 'of basic important in our society,'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996); it is a "freedom of personal choice" that is "one of the liberties protected by the Due Process Clause of the Fourteenth Amendment," *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639 (1974); and it is the "most important relation in life," *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978) (quoting *Maynard v. Hill*, 125 U.S. 190, 205 (1888)). Despite this, Texas not only forbids same-sex couples from enjoying the "vital personal right" of marriage, Texas' Constitution expressly forbids Texas and its political subdivisions from "creat[ing] or recogniz[ing] any legal status identical or similar to marriage." Tex. Const., art. 1, § 32.

3.  This lawsuit is brought by four citizens, each of whom wishes for the State of Texas to allow and recognize their marriages, but the State of Texas will not—simply because Plaintiffs wish to be married to someone of the same sex. Two of the Plaintiffs served honorably in our nation's armed forces, defending our freedoms. All of the Plaintiffs contribute to our nation's well-being as productive and conscientious citizens. Yet the State of

Texas denies them the same access to the institution of marriage, and its attendant benefits, enjoyed by every individual who wishes to marry a person of the opposite sex. The State of Texas has no justification for depriving Plaintiffs of their rights in this way.

4.      In Texas, Plaintiffs cannot legally marry their partner before family, friends, and society—a right enjoyed by citizens who wish to marry a person of the opposite sex. And should they become married in a state that has established marriage equality, Texas explicitly voids their marriage. There is no rational basis, much less a compelling government purpose, for Texas to deny Plaintiffs the same right to marry enjoyed by the majority of society. Accordingly, Plaintiffs petition this Court for a declaratory judgment that Article I, § 32 of the Texas Constitution and corresponding statutes violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Plaintiffs also petition this Court for a permanent injunction enjoining Defendants from continuing to deprive Plaintiffs of their right to marry.

## II.      PARTIES

5.      Plaintiff Cleopatra De Leon is a Texas resident. She legally married Plaintiff Nicole Dimetman in Massachusetts, and she wants the State of Texas to either recognize her marriage or allow her to re-marry Plaintiff Dimetman in Texas.

6.      Plaintiff Nicole Dimetman is a Texas resident. She legally married Plaintiff Cleopatra De Leon in Massachusetts, and she wants the State of Texas to either recognize her marriage or allow her to re-marry Plaintiff De Leon in Texas.

7.      Plaintiff Mark Phariss is a Texas resident. He wants to marry his long-time partner, Plaintiff Vic Holmes, in Texas.

8.      Plaintiff Vic Holmes is a Texas resident. He wants to marry his long-time partner, Plaintiff Mark Phariss, in Texas.

9. Defendants are Texas State officials, and Plaintiffs sue them in their official capacities.

10. Defendant Rick Perry is the Governor of the State of Texas, and Plaintiffs sue him in his official capacity. Plaintiffs will serve Governor Perry pursuant to the Federal Rules of Civil Procedure.

11. Defendant Greg Abbott is the Attorney General of the State of Texas, and Plaintiffs sue him in his official capacity. Plaintiffs will serve Defendant Abbott pursuant to the Federal Rules of Civil Procedure.

12. Defendant Gerard Rickhoff is the County Clerk of Bexar County, Texas, and Plaintiffs sue him in his official capacity. Plaintiffs will serve Defendant Rickhoff pursuant to the Federal Rules of Civil Procedure.

13. Defendant David Lakey, M.D. is the commissioner of the Texas Department of State Health Services, which includes the bureau of vital statistics, and Plaintiffs sue him in his official capacity. Plaintiffs will serve Defendant Lakey pursuant to the Federal Rules of Civil Procedure.

### III.   JURISDICTION AND VENUE

14. This case raises questions under the Constitution of the United States and 42 U.S.C. § 1983 and, thus, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 2201, and 2202.

15. Venue is proper under 28 U.S.C. § 1391 because Defendant Rickhoff resides in this district and all Defendants reside in Texas. Venue is also proper in this Court because a substantial part of the events giving rise to this claim occurred in this district.

## IV.     FACTUAL BACKGROUND

### A.     De Leon and Dimetman

16.     De Leon and Dimetman met in 2001. At the time, Dimetman was running her own business and De Leon was working as a statistical analyst while also serving in the Texas Air National Guard. De Leon is a United States Air Force veteran; she was on active duty for four years and served six years in the Air National Guard. She was honorably discharged after ten years of service.

17.     De Leon and Dimetman started dating in September 2001. They have been in a committed relationship since then. During this time, they supported one another while De Leon applied to and completed graduate school and while Dimetman applied to and completed law school. Dimetman is now an attorney licensed to practice law in the State of Texas. De Leon and Dimetman continue to share finances, live together, and have a loving, stable relationship.

18.     As people in love often do, De Leon and Dimetman wanted to marry one another, declaring their love and commitment before family, friends, and society. Because they lived in Texas, they were unable to marry in their home state. As a result, they incurred significant expense and traveled to Boston, Massachusetts, where they married on September 11, 2009.

19.     De Leon and Dimetman also wanted a family. In 2011, De Leon conceived, and in 2012, gave birth to C. While De Leon is C's biological parent, Dimetman adopted C. De Leon and Dimetman incurred significant expenses to ensure that the State of Texas recognized each as C's parent. They each dedicate countless hours raising, loving, nurturing, educating, and caring for C.

20.     De Leon and Dimetman's marriage is recognized in the state of Massachusetts. It would also be recognized in California, Connecticut, Delaware, the District of Columbia,

Iowa, Maine, Maryland, Minnesota, New Hampshire, New Jersey, New York, Rhode Island, Washington, and Vermont.

21. Their marriage is not recognized by the State of Texas.

22. Texas' constitution and statutes prevented De Leon and Dimetman from marrying in Texas.

23. If Texas allowed De Leon and Dimetman to marry or recognized their out-of-state marriage, the federal government would recognize their marriage for all purposes, as required by the United States Supreme Court decision in *United States v. Windsor*, 133 S. Ct. 2675 (June 26, 2013). As a result of Texas' constitutional and statutory provisions, however, the federal government does not recognize their marriage for all purposes.

### B. Holmes and Phariss

24. Holmes and Phariss met in the spring of 1997. At the time, Holmes was in the Air Force and stationed in San Antonio. Phariss was and remains an attorney licensed to practice law in Texas. They quickly developed a friendship that blossomed into a dating relationship. On August 9, 1997, they went on their first date. They celebrate August 9 as their anniversary.

25. After dating for several months, Holmes and Phariss started living together. Their relationship and love for one another continued to grow. While living together, Holmes, who joined the Air Force when he was eighteen, began a military program to become a physician's assistant. After completing the program, Holmes became an officer, and the Air Force stationed him in San Diego at the Naval Medical Center.

26. Because Phariss continued to live and work in Texas, he and Holmes started an eleven year period of extraordinary personal sacrifice to maintain and strengthen their relationship despite the distance between them. While Holmes was in San Diego, Phariss

would travel to see Holmes every few weeks (Holmes was generally unable to leave San Diego). The Air Force re-assigned Holmes to the Keesler Medical Center in Biloxi, Mississippi, and Holmes and Phariss began commuting every other week (sometimes more) to see one another. The Air Force later stationed Holmes at the Air Force base in Little Rock, Arkansas, and he and Phariss were able to see each other nearly every weekend. Holmes' last assignment was at Sheppard Air Force base in Wichita Falls, Texas. During this time, Holmes and Phariss were able to see one another each weekend and on special occasions during the week.

27. Holmes honorably served our nation for nearly twenty-three years and retired as a Major at the end of 2010. After eleven years traveling to see one another and maintain and strengthen their relationship, Holmes and Phariss were able to live together again.

28. On August 9, 2013, Holmes and Phariss celebrated their sixteenth anniversary.

29. Holmes and Phariss want to marry one another and declare their love and commitment to one another before family, friends, and society.

30. Texas' constitution and statutes prevented Holmes and Phariss from marrying in Texas. On October 3, 2013, Holmes and Phariss applied for marriage licenses from the Bexar County Clerk. The County Clerk's office refused to issue a marriage license because they are a same-sex couple.

31. If Holmes and Phariss were able to marry, the federal government would recognize their marriage pursuant to the United States Supreme Court's decision in *Windsor*.

### C. Texas Denies Same-Sex Couples the Right to Marry or to Attain Any of the Rights Afforded Married Heterosexual Couples.

32. The Texas Constitution defines marriage as "the union of one man and one woman," and it prevents Texas and its political subdivisions from recognizing same-sex marriages. Tex. Const., art. 1, § 32. Not only does it prevent same-sex couples from marrying, the Texas Constitution expressly forbids Texas and its political subdivisions from "creat[ing] or recogniz[ing] any legal status identical or similar to marriage." *Id.*

33. Reflecting the Texas Constitution, the Texas Family Code prohibits county clerks, including the Bexar County Clerk, from issuing marriage licenses to persons of the same-sex. Tex. Family Code Ann. § 2.001. The Texas Family Code requires the bureau of vital statistics to prescribe the information required in a marriage license application, which is limited to heterosexual couples. *Id.* § 2.002.

34. The Texas Family Code also voids all same-sex marriages and all same-sex civil unions. *Id.* § 6.204. Texas expressly denies same-sex couples from the "right or claim to any legal protection, benefit, or responsibility asserted as a result of a marriage between persons of the same sex or a civil union." *Id.* Thus, the State of Texas nullifies the rights, benefits, and responsibilities that same-sex couples married in another jurisdiction would enjoy if they were heterosexual.

### D. Plaintiffs' Inability to Marry Causes Substantial Harm.

35. Texas' constitutional and statutory provisions create a legal system in which civil marriage is exclusively restricted to heterosexual couples. The Texas Constitution and various statutes deny same-sex couples the right to enter into a civil marriage.

36. Plaintiffs suffered and continue to suffer substantial and irreparable harm as a result of Texas' refusal to recognize or allow same-sex marriages. These harms include social stigma, the loss of federal rights, and the loss of state rights.

#### i. Plaintiffs suffer social stigma as a result of their inability to marry.

37. Marriage plays a unique and central social, legal, and economic role in American society. Marriage is a valued social institution, and married couples are treated differently than unmarried couples. Being married reflects the commitment that a couple makes to one another, and represents a public, legal acknowledgment of the value, legitimacy, depth, and permanence of the married couple's private relationship. Legally-recognized marriages confer rights and responsibilities that are not available to unmarried couples.

38. Texas' constitutional and statutory prohibitions against recognizing same-sex marriages convey the State's view that Plaintiffs' relationships are of lesser value than relationships of heterosexuals and are unworthy of legal recognition and support. The State's refusal to recognize same-sex marriages is a very public rejection of Plaintiffs' most significant relationship, and it harms Plaintiffs, any children Plaintiffs have, and their families. The refusal to recognize same-sex marriage also invites and facilitates private discrimination against homosexuals and promotes the view that their relationships and families are inferior.

39. By prohibiting same-sex couples from marrying, Texas "places same-sex couples in an unstable position," "demeans" same-sex couples, "humiliates tens of thousands of children now being raised by same-sex couples," and "instructs all [State] officials, and indeed

all persons with whom same-sex couples interact, including their own children, that their [relationship] is less worthy than the [relationship] of others." *United States v. Windsor*, 133 S. Ct. 2675, 2694-96 (2013). Similarly, by refusing to recognize the validity of same-sex marriages legally performed in other states, Texas treats those unions as second-class marriages, "undermin[ing] both the public and private significance of state-sanctioned same-sex marriages" by "tell[ing] those couples, and all the world, that their otherwise valid marriages are unworthy of [Texas'] recognition." *Id.* at 2693-94.

### ii. Plaintiffs' inability to marry affects numerous federal protections, benefits, and obligations.

40. Texas' refusal to permit Plaintiffs to marry or recognize their out-of-state marriage deprives Plaintiffs of numerous federal protections, benefits, and obligations that are available to married same-sex couples. *See id.* at 2683 (noting that over 1,000 federal laws address marital or spousal status). These federal rights include, among others, having the same rights as heterosexual married couples in one another's Social Security benefits, 42 U.S.C. § 416, spousal privileges, seeking protections under the Family and Medical Leave Act, 29 U.S.C. § 2612, and federal Medicaid benefits.

41. Same-sex couples residing in Texas cannot rely upon an out-of-state marriage to confer federal protections, benefits, and obligations. Texas same-sex couples who marry in another state must contend with substantial uncertainty regarding whether the marriage will be recognized by the federal government for various purposes. For instance, while the Internal Revenue Service recently adopted a "state of celebration" rule in recognizing same-sex marriages, Rev. Ruling 2013-17 (Aug. 30, 2013), it is unclear what other federal agencies will follow. In fact, the Department of Labor recently announced that FMLA will apply only to same-sex couples that reside in states recognizing their marriage. *See* Dept. of Labor, Fact

Sheet #28F: Qualifying Reasons for Leave under the Family and Medical Leave Act (Aug. 2013). And, on September 5, 2013, Major General John F. Nichols requested that Defendant Abbott advise him what, if any, actions the Texas Military Forces can take to comply with the Department of Defense's policy of extending spousal and dependent benefits to same-sex couples without violating the Texas Constitution and Texas statutes.

### iii. Plaintiffs' inability to marry affects numerous state-law protections, benefits, and obligations.

42. Texas' refusal to marry or recognize Plaintiffs' marriage also denies Plaintiffs many state-law benefits. Plaintiffs cannot claim statutory protections afforded married couples upon the death of a spouse, such as intestacy rights. *See* Tex. Probate Code §§ 38, 45. The surviving spouse could not file a wrongful death suit if a spouse is killed. Tex. Civ. Prac. & Rem. Code § 71.004. Same-sex couples cannot claim protections to the partition of their homestead upon the death their spouse. Tex. Const., art. 16, § 52. Same-sex couples cannot rely upon courts to equitably divide property as a heterosexual married couple can if they divorce, and they are not entitled to a community property presumption. Tex. Family Code §§ 3.003, 7.001, 7.003. Nor can same-sex couples seek spousal maintenance if they separate or divorce. *Id.* § 8.051. Additionally, absent conferring power of attorney or other written agreement, Plaintiffs do not have the right to make health care decisions for one another when necessary, and Plaintiffs do not have the right to make burial decisions and other decisions regarding the disposition and handling of the remains of his or her spouse. Same-sex couples also cannot claim spousal privileges to avoid testifying against one another. Tex. R. Evid. 504.

43. Thus, the Texas Constitution and statutes and Defendants, acting under color of law, are denying Plaintiffs the intangible and tangible benefits of being married.

### E. Texas' Constitutional and Statutory Provisions Banning Same-Sex Marriage Are Subject to Heightened Scrutiny.

44. Homosexuals have faced a long and painful history of societal and government-sponsored discrimination.

45. While their sexual orientation bears no relation to their ability to contribute to society, gay and lesbian individuals historically have been, and continue to be, the target of purposeful discrimination, including state-sanctioned discrimination, due solely to their sexual orientation.

46. Sexual orientation is immutable and fundamental to all individuals.

47. Gay and lesbian individuals lack the political power to eliminate discriminatory laws.

48. Because the same-sex marriage prohibitions classify citizens based upon factors that reflect "prejudice and antipathy—a view that those in the burdened class are not as worthy or deserving as others," *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985), the prohibitions must pass heightened judicial scrutiny.

### F. Texas' Refusal to Allow or Recognize Same-Sex Marriage Does Not Serve Any Government Interest.

49. Whether under a strict or heightened scrutiny analysis, or under the more lenient rational basis test, Texas' prohibition of same-sex marriage does not bear any relation to a legitimate government purpose, much less an important or compelling governmental interest. Excluding same-sex couples from marriage does not lead to increased stability in marriages between heterosexual couples. Permitting same-sex couples to marry does not destabilize heterosexual marriages.

50. Excluding same-sex couples from marriage does not optimize the child-rearing environment of married heterosexuals. Children of same-sex marriages do not suffer any harm

from having same-sex parents nor are such children more likely to become homosexual. "A great deal of scientific research documents there is no cause-and-effect relationship between parents' sexual orientation and children's well-being." Press Release, American Academy of Pediatrics, American Academy of Pediatrics Supports Same Gender Civil Marriage (Mar. 21, 2013).

## V.     REQUEST FOR DECLARATORY RELIEF
## CLAIM ONE: DUE PROCESS

51.     Plaintiffs incorporate by reference paragraphs 1 through 50, *supra*, as if fully set forth herein.

52.     The Texas Constitution and statutes at issue in this case violate liberties protected by the Due Process Clause of Fourteenth Amendment to the United States Constitution, both on its face and as applied to Plaintiffs.

53.     The Texas Constitution and statutes at issue here impinge on fundamental liberties by denying same-sex couples the opportunity to marry and deprive them of the recognition of their out-of-state marriages. The State of Texas, through Defendants, refuses to allow same-sex couples to enter into the same officially sanctioned relationship as heterosexual individuals. By denying same-sex couples the right to marry and refusing to recognize their out-of-state marriages, Texas stigmatizes same-sex couples, as well as their children and families, and denies them the same dignity, respect, and stature afforded officially recognized heterosexual family relationships.

## CLAIM TWO: EQUAL PROTECTION

54. Plaintiffs incorporate by reference paragraphs 1 through 53, *supra*, as if fully set forth herein.

55. The Texas Constitution and statutes at issue here violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, both on its face and as applied to Plaintiffs.

56. Texas' constitutional and statutory law restricts civil marriage to heterosexuals. Same-sex couples are therefore unable to marry persons of their choice. Thus, Texas law treats similarly-situated people differently by permitting heterosexual couples to marry, but denying that right, and the benefits which come with that right, to same-sex couples. Because same-sex couples are unable to marry, they are unequal in the eyes of the law and their families are denied the same respect as families of heterosexuals. By explicitly denying civil marriage to same-sex couples, Texas' ban on same-sex marriage discriminates on the basis of sexual orientation.

57. The disadvantage Texas imposes on same-sex couples is the result of disapproval or animus against a politically unpopular group. The Texas constitution and statutes at issue in this lawsuit deny same-sex couples, but not others, the right to marry. Thus, the Texas Constitution and the statutes at issue in this case violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because they relegate homosexuals to a disfavored legal status, thereby creating a category of "second class citizens."

58. The Texas Constitution and the statutes at issue in this case also violate the Equal Protection Clause because they discriminate on the basis of sex by distinguishing between heterosexual couples and same-sex couples. Thus, the limitation on civil marriage

depends upon an individual person's sex; a man who wishes to marry a man may not do so because he is a man, and a woman may not marry a woman because she is a woman.

### CLAIM THREE: VIOLATION OF 42 U.S.C. § 1983

59. Plaintiffs incorporate by reference paragraphs 1 through 58, *supra*, as if fully set forth herein.

60. Insofar as Defendants, acting under color of state law, enforce Texas' constitutional and statutory terms denying Plaintiffs the right to marry, Defendants are depriving and will continue to deprive Plaintiffs of numerous rights secured by the United States Constitution in violation of 42 U.S.C. § 1983.

### IRREPARABLE HARM

61. Plaintiffs incorporate by reference paragraphs 1 through 60, *supra*, as if fully set forth herein.

62. Plaintiffs are severely and irreparably harmed by Texas' prohibition of same-sex marriages and Texas' refusal to recognize same-sex marriages legally performed in other states. By way of example, Plaintiffs are denied their constitutional rights to marry and are forced to suffer the severe humiliation, emotional distress, pain, suffering, psychological harm, and stigma caused by the inability to marry the ones they love and have society recognize their marriages.

63. Each day that Plaintiffs are denied the freedom to marry, or have their marriage recognized by Texas, they suffer irreparable harm as a direct result of Defendants' violation of their constitutional rights.

64. An actual and judicially cognizable controversy exists between Plaintiffs and Defendants regarding Texas' refusal to allow or recognize same-sex marriage.

# PRAYER

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order including or directing the following relief:

a. Issue declaratory judgment that Article I, § 32 of the Texas Constitution and the Texas statutes at issue in this case, as applied to Plaintiffs, violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

b. Issue a permanent injunction barring enforcement or application of Texas' constitutional and statutory provisions at issue herein;

c. Award Plaintiffs their reasonable costs, expenses, and attorneys fees; and

d. For such other relief the Court deems proper, just and equitable.

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By: _____
Barry A. Chasnoff (SBN 04153500)
bchasnoff@akingump.com
Daniel McNeel Lane, Jr. (SBN 00784441)
nlane@akingump.com
Frank Stenger-Castro (SBN 19143500)
fscastro@akingump.com
300 Convent Street, Suite 1600
San Antonio, Texas 78205
Phone: (210) 281-7000
Fax: (210) 224-2035

Attorneys for Plaintiffs