IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CLEOPATRA DE LEON, NICOLE DIMETMAN, VICTOR HOLMES, and MARK PHARISS, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION |
| | § § | NO. 5:13-CV-982-OLG |
| | § | |
| RICK PERRY, in his Official Capacity as Governor of the State of Texas, GREG ABBOTT, in his Official Capacity as Texas Attorney General, GERARD RICKHOFF, in his Official Capacity as Bexar County Clerk, and DAVID LAKEY, in his Official Capacity as Commissioner of the Texas Department of State Health Services, | § § § § § § § § § § | |
| *Defendants*. | § § | |

## NOTICE OF RECENT AUTHORITY REGARDING PLAINTIFFS' MOTION TO LIFT STAY OF INJUNCTION

The Fifth Circuit is currently considering a similar issue raised by the plaintiffs' motion to lift the stay. On November 25, 2014, a federal district court in Mississippi issued a preliminary injunction against the State's traditional-marriage law. *Campaign for S. Equal. v. Bryant*, No. 3:14-CV-818-CWR-LRA, 2014 WL 6680570 (S.D. Miss. Nov. 25, 2014). The court stayed the execution of the injunction for fourteen days (through December 9, 2014) to allow the State to seek a stay from the Fifth Circuit. The state defendants filed their stay motion with the Fifth Circuit on November 26, requesting a ruling by December 8. Emergency Mot.

to Stay, *Campaign for Southern Equality v. Bryant*, No. 14-60837, Doc. 00512850678 (5th Cir. Nov. 26, 2014) (attached). The Fifth Circuit has not yet ruled on the stay motion.

Although this Court lacks jurisdiction to modify the preliminary injunction to lift the stay, if it were nevertheless inclined to do so, it should await the Fifth Circuit's ruling on the stay motion in the Mississippi case because that decision will have direct bearing on the merits of the plaintiffs' motion.

Date:  December 3, 2014

Respectfully submitted.

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for
Legal Counsel

JONATHAN F. MITCHELL
Solicitor General

*/s/  Michael P. Murphy*
MICHAEL P. MURPHY
Assistant Solicitor General
Texas Bar No. 24051097

BETH KLUSMANN
Assistant Solicitor General
Texas Bar No. 24036918

WILLIAM T. DEANE
Assistant Attorney General
Texas Bar No. 05692500

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-2995
Fax: (512) 474-2697
michaelp.murphy@texasattorneygeneral.gov

COUNSEL FOR STATE DEFENDANTS
RICK PERRY, GREG ABBOTT,
AND DAVID LAKEY

## CERTIFICATE OF SERVICE

I certify that on December 3, 2014, this document was served on counsel of record, via the Court's CM/ECF Document Filing System and/or electronic mail.


_/s/ Michael P. Murphy_
MICHAEL P. MURPHY
Assistant Solicitor General

ATTACHMENT

No. 14-60837

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**CAMPAIGN FOR SOUTHERN EQUALITY; REBECCA BICKETT; ANDREA SANDERS; JOCELYN PRITCHETT; and CARLA WEBB**

      **Plaintiffs-Appellees**

v.

**PHIL BRYANT, in his official capacity as Governor of the State of Mississippi; and JIM HOOD, in his official capacity as Mississippi Attorney General**

      **Defendants-Appellants**

On Appeal from the United States District Court
for the Southern District of Mississippi, Northern Division

## OPPOSED EMERGENCY MOTION TO STAY EFFECT OF
## PRELIMINARY INJUNCTION PENDING APPEAL

Justin L. Matheny
Paul E. Barnes
Special Assistant Attorneys General
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, MS   39205
Telephone: (601) 359-3680

*Counsel for Appellants-Defendants*

## NATURE OF EMERGENCY

At 7:22 p.m. on November 25, 2014, the Southern District of Mississippi entered a preliminary injunction prohibiting the State of Mississippi from enforcing its traditional marriage laws, which permit only marriages between a man and a woman, in a case styled *Campaign for Southern Equality, Rebecca Bickett, Andrea Sanders, Jocelyn Pritchett, and Carla Webb vs. Phil Bryant, in his Official Capacity as Governor of the State of Mississippi; Jim Hood, in his Official Capacity as Mississippi Attorney General; and Barbara Dunn, in her Official Capacity as Hinds County Circuit Clerk*, Docket No. 3:14-cv-00818-CWR-LRA.  At the same time, the district court denied the State's contingent motion for stay pending the resolution of this appeal, choosing instead to enter only a 14 day temporary stay to permit the State to seek emergency relief from this Court.

Pursuant to 5th Cir. Rule 27.3, in non-death penalty cases, motions seeking relief before the expiration of 14 days after filing are considered emergency motions and must meet the requirements of both Rule 27.3 and Fed. R. App. P. 8.  The emergency arises from the fact that the temporary stay will expire on December 9, 2014.  Unless this

ii

court enters an emergency stay, at that point, the preliminary injunction permitting same-sex marriage in Mississippi will go into effect.

The State requests the Court enter a stay no later than December 8, 2014, effective unless and until such time as *this* Court rules that Mississippi's traditional laws (and substantively identical laws in Louisiana and Texas) are prohibited by the Fourteenth Amendment.

Absent the immediate entry of an emergency stay, at the opening of business on Wednesday, December 10, 2014, Mississippi circuit clerks will be forced to issue marriage licenses to same-sex couples, in derogation of Mississippi's strong public policy favoring traditional marriages, as reflected in state statutory and constitutional provisions.

The State Defendants, Governor Phil Bryant and Attorney General Jim Hood (hereinafter "the State"), filed a contingent motion for stay pending appeal in the district court in the event that court entered a preliminary injunction.  Last night, the district court granted the Plaintiff-Appellees' Motion for Preliminary Injunction, but entered only a 14 day temporary stay, necessitating this request for emergency relief.  The State promptly filed its notice of appeal in accordance with

Fed. R. App. 3(a)(1), vesting jurisdiction of this appeal in this Court
pursuant to 28 U.S.C. § 1292(a)(1).

   Putting Mississippi on different legal footing than Louisiana and
Texas in the context of same-sex marriage would disserve the public
interest, especially with this Court poised and prepared to resolve this
issue.  Same-sex marriages in those states are not currently permitted
in this Circuit, pending the outcome of the appeals in *Cleopatra
DeLeon, et al. vs. Rick Perry, et al.*, No. 14-50196 (5th Cir. appeal filed
Mar. 1, 2014) (W.D. Tex.) and *Jonathan Robicheaux, et al. vs. James
Caldwell, et al.*, No. 14-31037 (5th Cir. appeal filed Sept. 5, 2014) (E.D.
La.).

   At the request of the plaintiffs in *Robicheaux*, this Court agreed to
expedite those appeals and assigned both to the same merits panel.  *See
Robicheaux v. Caldwell*, No. 14-31037, Order Granting Motion to
Expedite Appeal (5th Cir. Sept. 25, 2014).  Those cases are fully briefed
and tentatively set for oral argument the week of January 5, 2015.  *See
Robicheaux v. Caldwell*, No. 14-31037, Docket Entry dated Oct. 27,
2014 (5th Cir.).

   Further complicating matters within the Circuit, the Louisiana

iv

plaintiffs have now asked the Supreme Court to review that case before this Court has the opportunity to rule, *see Robicheaux v. George, cert. petition filed*, 2014 WL 6617102 (Nov. 20, 2014), and the *DeLeon* plaintiffs, who originally agreed to a stay, have now asked the Texas district court to lift that stay.  *See DeLeon v. Perry*, No. 5:13-cv-00982, Plaintiffs' Opposed Motion to Lift Stay of Injunction [Doc. 83] (W.D. Tex. Nov. 24, 2014).

The tactics of same-sex plaintiffs nationwide (including the Mississippi, Louisiana, and Texas cases), and their apparent overriding strategy of pushing the courts into a headlong rush to judgment, underscore the dire need for this Court to enter a stay to maintain uniformity and stability throughout the Circuit until the validity of state traditional marriage laws is ultimately decided, whether by this Court or by the Supreme Court.

This Court should not permit precipitous actions by the district courts to interfere with the orderly plan and timetable this Court already has in place to resolve the validity of state laws barring same-sex marriages.

The preliminary injunction drastically alters the status quo and

disrupts the social fabric and traditions of the State.  If same-sex

marriages are permitted to proceed, even for a very short time, if the

validity of Mississippi's traditional marriage laws is upheld on appeal,

the State would be presented with the extremely unfortunate and

thorny issue of having to legally unwind any marital or other family

relationships which were created or altered pursuant to "in the

interim" same-sex marriage licenses.

The recent debacle in the State of Utah that resulted from the

courts' "on-again, off-again" treatment of same-sex marriage is

illustrative, and this Court should take action to prevent Mississippi

from having to endure the same experience.  *See Evans v. Utah*, 2014

WL 2048343, at *1-4 (D. Utah May 19, 2014) (describing extreme

confusion, uncertainty, and chaos which resulted from district court's

failure to stay effect of injunction permitting same-sex marriage).

Thus, absent a stay, the State of Mississippi, and more

importantly, the public interest, will be immediately and irreparably

harmed by the State's inability to enforce its traditional marriage laws.

Counsel for Plaintiffs-Appellees has informed the undersigned

that Plaintiffs-Appellees oppose the emergency relief requested herein

and intend to submit a written opposition to this motion.

Mississippi respectfully requests that, no later than December 8, 2014, this Court enter a stay of the effect of the preliminary injunction pending the ultimate resolution of this appeal.  The State further respectfully requests that the Court grant emergency and expeditious consideration of this motion, as time is of the essence.

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for the Defendants-Appellants,
Mississippi Governor Phil Bryant, and Mississippi Attorney General
Jim Hood, certifies that the following listed persons as described in the
fourth sentence of Rule 28.2.1 have an interest in the outcome of this
case. These representations are made in order that the judges of this
Court may evaluate possible disqualification or recusal:

1.   Plaintiff-Appellee Campaign for Southern Equality;

2.   Plaintiff-Appellee Rebecca Bickett;

3.   Plaintiff-Appellee Andrea Sanders;

4.   Plaintiff-Appellee Jocelyn Pritchett;

5.   Plaintiff-Appellee Carla Webb;

6.   Andrew J. Ehrlich, Counsel for Plaintiffs-Appellees;

7.   Diane E. Walton, Counsel for Plaintiffs-Appellees;

8.   Jacob H. Hupart, Counsel for Plaintiffs-Appellees;

9.   Jaren Janghorbani, Counsel for Plaintiffs-Appellees;

10.  Joshua D. Kaye, Counsel for Plaintiffs-Appellees;

11.  Robert B. McDuff, Counsel for Plaintiffs-Appellees;

12.  Roberta A. Kaplan, Counsel for Plaintiffs-Appellees;

13.    Warren Stramiello, Counsel for Plaintiffs-Appellees;

14.    Dianne Herman Ellis, Counsel for Plaintiffs-Appellees;

15.    Rita Nahlik Silin, Counsel for Plaintiffs-Appellees;

16.    Sibyl C. Byrd, Counsel for Plaintiffs-Appellees;

17.    Defendant-Appellant Phil Bryant, in his Official Capacity as
       Governor of the State of Mississippi ;

18.    Defendant-Appellant Jim Hood, in his Official Capacity as
       Mississippi Attorney General;

20.    Justin L. Matheny, counsel for Governor Bryant and General
       Hood;

21.    Paul E. Barnes, counsel for Governor Bryant and General Hood;

21.    Barbara Dunn, in her Official Capacity as Hinds County Circuit
       Clerk;

22.    Pieter Teeuwissen, counsel for Hinds County Circuit Clerk,
       Barbara Dunn;

23.    Anthony R. Simon, counsel for Hinds County Circuit Clerk,
       Barbara Dunn.

       This the 26th day of November, 2014.

                                    s/ Paul E. Barnes
                                    PAUL E. BARNES

## <u>ARGUMENT AND AUTHORITIES</u>

The State has a strong likelihood of success on the merits, and the balance of equities heavily favors a stay.  Because the preliminary injunction disserves the public interest, the Court should grant this Emergency Motion for Stay Pending Appeal to hold the status quo to protect the rights not only of the litigants, but of the general public and citizens of Mississippi.

## STANDARD OF REVIEW

The Federal Rules of Appellate Procedure require that  "[a] party must ordinarily move first in the district court for the following relief . . . an order suspending, modifying, restoring, or granting an injunction while an appeal is pending."  Fed. R. App. P. 8(1)(C).  In considering a motion for stay, a court should examine four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Charles Alan Wright and Arthur R. Miller, et al., *Federal Practice & Procedure* § 2904 (3d ed. 2014) (citing *Hilton v. Braunskill*, 481 U.S.

770, 776, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724 (1987)).

This Court and other circuits have tempered the first element, such that a party seeking a stay "need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). A recent decision of this Court emphasized that the immediacy of the harm resulting from the denial of a stay increases the value of maintaining the status quo. *See Veasey v. Perry*, 2014 WL 5313516, at *1-2 (5th Cir. Oct. 14, 2014) (granting Texas' request for stay pending appeal in challenge to voter identification law filed "on the eve of the election").

## BACKGROUND

The background and circumstances of the legal dispute over social policy regarding same-sex marriage are well-known. Since the creation of the United States, the individual states have possessed virtually exclusive authority to regulate domestic relations. Particularly in the past eighteen months since the United States Supreme Court decided

*United States v. Windsor*, 133 S. Ct. 2675 (2013), same-sex couples have filed suit in various courts alleging that the Fourteenth Amendment forbids state laws limiting marriage to opposite-sex couples. Courts have approached the constitutional issues with different rationales and reached different ultimate results.

After the Supreme Court denied certiorari in same-sex marriage cases from the Fourth, Seventh, Ninth, and Tenth Circuits on October 6, 2014, thus permitting lower court decisions striking down traditional marriage laws to go into effect, same-sex marriage proponents shifted into high gear, presumably prompting, at least in part, Plaintiffs-Appellants' decision to bring the current challenge to Mississippi's traditional marriage laws.

However, that dynamic changed on November 6, 2014,when the Sixth Circuit handed down its decision in *DeBoer v. Snyder*, --- F.3d ---, 2014 WL 5748990 (6th Cir. Nov. 6, 2014) (holding *Baker v. Nelson* remains binding Supreme Court precedent)[1] upholding traditional

---

[1] *Accord Conde-Vidal v. Garcia-Padilla*, --- F. Supp. 3d ---, 2014 WL 5361987, at *6 (D. P.R. Oct. 21, 2014) (Fourteenth Amendment challenge to ban on same-sex marriage must be dismissed "for want of a substantial federal question") (citing *Baker v. Nelson*, 409 U.S. 810, 93 S. Ct. 37 (1972)).

marriage laws in Tennessee, Michigan, Kentucky, and Ohio – and

creating a split of authority with the Fourth, Seventh, Ninth, and

Tenth Circuits.

Indeed, the Sixth Circuit in *DeBoer* identified a much deeper split

of authority across the circuits than simply contrary end results,

pointing out that no clear consensus has developed as to specifically

*why* traditional marriage laws must be deemed unconstitutional.  *See*

*DeBoer*, 2014 WL 5748990, at *7 (citing *Bostic v. Schaefer*, 760 F.3d 352

(4th Cir. 2014) (fundamental right); *Baskin v. Bogan*, 766 F.3d 648 (7th

Cir. 2014) (rational basis, animus); *Latta v. Otter*, No. 14–35420, 2014

WL 4977682 (9th Cir. Oct. 7, 2014) (animus, fundamental right, suspect

classification); *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014)

(fundamental right); *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014)

(fundamental right).

The preliminary injunction in this case reflects some of the same

uncertainty.  The district court erred in holding that the issue

presented by this case is the traditional fundamental right to marriage,

as opposed to a new fundamental right to *same-sex marriage* (thus

4

neatly side-stepping *Washington v. Glucksberg*, 521 U.S. 702 (1997))

but correctly held that heightened scrutiny was inappropriate as to the

equal protection analysis, because sexual orientation is not a suspect

class under either Supreme Court precedent or the law of the circuit;

erred in concluding that the traditional marriage laws do not pass the

rational basis test; and finds some evidence of animus.  Tab 1, at 23,

50-54, 60-61.

It now appears inevitable that the Supreme Court will be forced

to resolve the validity of traditional marriage laws in the very near

future.[2]  As a result, the public interest would be best served by holding

the status quo until this Court and the Supreme Court have spoken.[3]

Mississippi's strong public policy favoring traditional marriage is

well established.  In 1997, the Mississippi Legislature codified and

---

[2]*See, Bourke v. Beshear*, *cert. petition filed*, Docket No. 14-574  (U.S. Nov. 18, 2014); *DeBoer v. Snyder*, *cert. petition filed*, 2014 WL 6449712 (Nov. 14, 2014); *Tanco v. Haslam*, *cert. petition filed*, 2014 WL 6334259 (Nov. 14, 2014); *Henry v. Hodges*, *cert. petition filed*, 2014 WL 5907570 (Nov. 14, 2014).

[3]The Supreme Court's decision to deny a stay in *Wilson v. Condon*, No. 14A-533, --- S. Ct. ---, 2014 WL 6474220 (U.S. Nov. 20, 2014) is inapposite to the State's request here, because this Circuit has not yet spoken to the issue.  The Fourth Circuit already has in place a binding precedent, *Bostic v. Schaefer*, 760 F.3d 352 (4th. Cir. 2014), *cert. denied*, 135 S. Ct. 308 (Oct. 6, 2014), holding that same-sex marriage bans are unconstitutional.  This Circuit does not.

reinforced the State's traditional understanding of marriage by

enacting Mississippi Code Section 93-1-1(2) which provides that

> Any marriage between persons of the same gender is
> prohibited and null and void from the beginning.  Any
> marriage between persons of the same gender that is valid
> in another jurisdiction does not constitute a legal or valid
> marriage in Mississippi.

Subsequently, in November 2004, Mississippians enacted Article 14,

Section 263A of the Mississippi Constitution pursuant to the State's

legislative constitutional amendment procedure, approved by 86% of

total votes cast in that year's general election, affirming the strong

public policy of the State:

> Marriage may take place and may be valid under the laws of
> this State only between a man and a woman.  A marriage in
> another State or foreign jurisdiction between persons of the
> same gender, regardless of when the marriage took place,
> may not be recognized in this State and is void and
> unenforceable under the laws of this State.

On October 20, 2014, Plaintiffs, the Campaign for Southern

Equality, Rebecca Bickett, Andrea Sanders, Jocelyn Pritchett, and

Carla Webb (collectively "the Campaign"), filed suit targeting

Mississippi's traditional marriage laws by suing the Governor, Attorney

General, and a Circuit Clerk.  In the complaint, the Campaign raised

the same issues presented in the Texas and Louisiana appeals already
pending before this Court.  After a hearing on November 12, 2014, the
district court entered the preliminary injunction in favor of the
Campaign on November 25, 2014.

Pursuant to Fed. R. App. P. 8(a)(1)(C), the State sought a stay in
the first instance from the district court, which denied a full stay
pending resolution of this appeal, and entered only a temporary 14 day
stay to permit the State to seek emergency relief from this Court.  Tab
1, at 71-72.  The State's strong showing on the merits; the balance of
the equities, including the immediacy of the irreparable harm which
will be suffered by the State; and the strong public interest in the
stability of marriage laws warrant a stay pending the final resolution of
this appeal.

## I.  THE STATE HAS A STRONG LIKELIHOOD
## OF SUCCESS ON THE MERITS

### A.  *Baker v. Nelson* Bars Plaintiffs' Fourteenth
### Amendment Claims

In *Baker v. Nelson*, the Minnesota Supreme Court specifically
held that a state statute defining marriage as a union between persons

of the opposite sex did not violate the First, Eighth, Ninth, or
Fourteenth Amendments of the United States Constitution.  191
N.W.2d 185 (Minn. 1971), *appeal dismissed*, 490 U.S. 810 (1972).  The
United States Supreme Court unanimously agreed, dismissing the
*Baker* appeal "for want of a substantial federal question."  *Baker*, 409
U.S. at 810.  *Baker* remains a precedential ruling on the merits that
binds all state and lower federal courts.

On November 6, 2014, the Sixth Circuit broke ranks with the
courts striking down traditional marriage laws and declined to
speculate about the Supreme Court's possible intentions regarding
same-sex marriage.  The Sixth Circuit held, *inter alia*, that *Baker* was
binding precedent requiring that court to uphold traditional marriage
laws in Tennessee, Michigan, Ohio, and Kentucky.  *DeBoer v. Snyder*, --
- F.3d ---, 2014 WL 5748990, at *5-7 (6th  Cir. Nov. 6, 2014).  *Accord*
*Conde-Vidal v. Garcia-Padilla*, --- F. Supp. 3d ---, 2014 WL 5361987, at
*10 (D. P.R. Oct. 21, 2014) ("*Baker*, which necessarily decided that a
state law defining marriage as a union between a man and a woman
does not violate the Fourteenth Amendment, remains good law").  In

8

this case, the district court erred by not following *Baker v. Nelson* as binding precedent.  Tab 1, at 12-16.

In *United States v. Windsor*, 133 S. Ct. 2675 (2013), which invalidated Section 3 of the Defense of Marriage Act of 1996, the Supreme Court did not mention *Baker*, much less criticize it, which the majority surely could and would have done if overruling *Baker* had been on the Court's agenda.  Instead, the *Windsor* court cabined its ruling to "those lawful marriages" *already* authorized by state law. *Windsor*, 133 S. Ct. at 2696.

Moreover, the *Windsor* court did not create a free-standing substantive right for same sex couples to marry or have their marriages recognized.  *See Windsor*, 133 S. Ct. at 2696.  The result in *Windsor* cannot be divorced from the principles of federalism undergirding that decision.  *See Windsor*, 133 S. Ct. at 2696-97 (Roberts, C.J., dissenting) ("I think the majority goes off course . . . but it is undeniable that its judgment is based on federalism . . . . We may in the future have to resolve challenges to state marriage definitions affecting same-sex couples.  That issue, however, is not before us in this case.").

Justice Kennedy, in the penultimate paragraph in the *Windsor* majority opinion, disclaimed the interpretation championed by Plaintiffs, a disclaimer which has been ignored by courts across the country intent on striking down state same-sex marriage bans:

> The class to which DOMA directs its restrictions and restraints are those persons who are joined in same-sex marriages *made lawful by the State*.  DOMA singles out a class of persons *deemed by a State* entitled to recognition and protection to enhance their own liberty.  It imposes disability on the class by refusing to acknowledge *a status the State finds* to be dignified and proper.  DOMA instructs all federal officials, and indeed all persons with whom same-sex couples interact, including their own children, that their marriage is less worthy than the marriages of others. The federal statute is invalid, for no legitimate purpose overcomes the purpose and effect to disparage and to injure those *whom the State, by its marriage laws, sought to protect* in personhood and dignity.  By seeking to displace this protection and treating those persons as living in marriages less respected than others, the federal statute is in violation of the Fifth Amendment. *This opinion and its holding are confined to those lawful marriages.*

*Id.* at 2696 (emphasis added).

## B.     Plaintiffs' Fourteenth Amendment Claims Fail On the Merits

### 1.     "Heightened Scrutiny" Does Not Apply

"Heightened scrutiny" does not apply to traditional marriage laws

10

which preclude marriage of same-sex couples: because such laws "neither burden[] a fundamental right nor target[] a suspect class." *See, e.g., Romer v. Evans*, 517 U.S. 620, 631 (1996) (under rational basis test, the courts "will uphold the legislative classification so long as it bears a rational relation to some legitimate end") (citing *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)); *see also Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston, Texas*, 660 F.3d 235, 239 (5th Cir. 2011).

**No Suspect Classification.**  The district court correctly determined (as to the equal protection analysis) that sexual orientation is not a suspect class under Supreme Court precedent or the law of the circuit.  Tab 1, at 50.  *Accord Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir. 2004) ("Neither the Supreme Court nor this court has recognized sexual orientation as a suspect classification . . . .").

**No Fundamental Right.**  However, the district court erred in concluding that same-sex marriage falls under the umbrella of the traditional "fundamental right to marry" as that term has always been understood until the last eighteen months.  The district court's fundamental right analysis misinterprets the stringent test imposed by

the Supreme Court in *Washington v. Glucksberg*, 521 U.S. 702, 720-21

(1997).  When "carefully described," there is no purported fundamental

right to same-sex marriage which is "deeply rooted in this Nation's

history and tradition," *id.* at 720-21; *Malagon de Fuentes v. Gonzales*,

462 F.3d 498, 505 (5th Cir. 2006), and the district erred in concluding

otherwise.

### 2.   Mississippi's Traditional Marriage Laws Satisfy Rational Basis Review

The district court misapplied the rational basis test and erred in

concluding that Mississippi's traditional marriage laws do not pass

rational basis muster.  Courts conducting rational basis review must

presume the laws in question are valid and sustain them so long as

they are rationally related to a legitimate state interest.  *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Heller v.*

*Doe*, 509 U.S. 312, 320 (1993) (A state "has no obligation to produce

evidence to sustain the rationality of a statutory classification.").  The

rational basis test is not a means for the courts to second-guess

legislative enactments by litigating the facts undergirding such

enactments, but instead seeks only to determine whether any

12

conceivable rationale exists for the enactments. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993) (collecting authorities). Mississippi's traditional marriage laws pass muster, as they are rationally related to legitimate state interests, including, but not limited to protection of traditional marriages to encourage biological parents to establish and maintain stable family relationships and exercising caution by maintaining social policy through democratic means.

The issue for purposes of rational basis analysis is not whether Mississippi's traditional marriage laws are the only way, the best way, or even a "good" way, to further those interests. The issue is whether the State's conclusion that granting special status to the unions of opposite sex-couples, the only unions that, absent artificial means, can result in the creation of new life, is utterly irrational. And the answer, of course, is no. *See, e.g.*, *DeBoer v. Snyder*, --- F.3d ---, 2014 WL 5748990 (6th Cir. Nov. 6, 2014); *Robicheaux v. Caldwell*, 2 F. Supp. 3d 910 (E.D. La Sept. 3, 2014).

## II.  THE STATE WOULD BE IRREPARABLY HARMED ABSENT A STAY

13

**A.    The State Would Be Harmed by the Inability
to Enforce its Traditional Marriage Laws**

When a State is enjoined from enforcing its laws, "the State

necessarily suffers the irreparable harm of denying the public interest

in the enforcement of its laws.  As the State is the appealing party, its

interest and harm merges with that of the public."  *Planned Parenthood*

*v. Abbott*, 734 F.3d 406, 419 & nn.60-61 (5th Cir. 2013) (citing

*Maryland v. King*, 133 S. Ct. 1, 3, (2012) (Roberts, C.J., in chambers);

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)

(Rhenquist, J., in chambers); *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**B.    The State Would Be Harmed by Confusion and Practical
Difficulties Which Would Be Prevented by a Stay**

The State would also be harmed by the confusion and practical

difficulties which would be prevented by a stay.  Compliance with a

preliminary injunction would require that complex administrative and

regulatory programs be significantly revised to accommodate

recognition of same-sex marriages, and such changes cannot be

accomplished simply by flipping a switch on or off.  The problems which

a preliminary injunction would create for the circuit clerks in issuing

marriage licenses to same-sex couples represent only the tip of iceberg.

14

Issuing a marriage license is the easy part.  Modifying administrative

and regulatory schemes to fully implement such a sweeping change in

status would be much more difficult and time-extensive.

When the preliminary injunction goes into effect on December 10,

2014, it will immediately and permanently alter the existing status quo

in the State of Mississippi by an abrupt redefinition of marriage.

Other, prudent courts facing the same issue have exercised caution in

implementing such dramatic changes to the political and social

structure of a state.  *See, e.g., Bourke v. Beshear*, 996 F. Supp. 2d 542,

557-58 (W.D. Ky. Mar. 19, 2014).  *Cf. Evans v. Utah*, 2014 WL 2048343,

at *1-4 (D. Utah May 19, 2014) (describing confusion, uncertainty, and

chaos which resulted from failure to stay effect of injunction permitting

same-sex marriage, including conflicts among the state courts and

agencies which erupted due to disagreement over the validity of over

1,000 same-sex marriages cast into doubt when the Supreme Court

later entered a stay).[4]

---

[4]Interestingly, in addressing the State's contention that a stay pending appeal was
necessary to avoid "chaos," the district court relied on and quoted a newspaper article which was
published two days after the preliminary injunction hearing.  Tab 1, at 67.  The district court
stated that "[a]ny weight this argument had at oral argument, however, evaporated when the
newspaper reported the following after the hearing:  "Sherrie Swenson, county clerk for Salt Lake

The events that took place in Utah are *fact, not speculation*, and evidence the types of problems likely to occur in Mississippi despite the skepticism expressed by the district court in the preliminary injunction.

## III.  THE STAY WOULD *NOT* SUBSTANTIALLY INJURE PLAINTIFFS, BUT WOULD INSTEAD PROTECT THEM FROM POTENTIAL FUTURE HARM

The Court should balance the extent and severity of any harm to the Campaign and same-sex couples which might result from a stay, with the practical reality that a stay would protect same-sex couples, including the individual Plaintiffs, from future harm that would likely result from a reversal.  In *Guzzo v. Mead*, a district court explained its

---

County, which is Utah's most populated county, told The Clarion-Ledger Thursday her office did not witness 'chaos' at all when the federal judge struck down Utah's ban."  It is certainly unusual for a court to consider hearsay information contained in media reports, although the district court did note that "[n]ewspaper articles aren't evidence - but neither is argument of counsel."  Despite that disclaimer, it is readily apparent that the court accepted the information in the newspaper article as significant and accurate.  If such accounts were to be considered, there are numerous media accounts describing the "chaos" which actually took place in Utah.  *See, e.g.*, "Utah: Gay Marriage Not Legal Unless Solemnized Before Supreme Court Stay,"  Las Vegas Review-Journal, Jan. 8, 2014, available at http://www.reviewjournal.com/news/utah-gay-marriage-not-legal-unless-solemnized-supreme-court-stay(quoting the Utah governor's chief-of-staff as stating "[t]his was just the kind of chaos and uncertainty we hoped to avoid").  Other media accounts describe the severe problems caused by "on-again, off-again" same sex marriages in other states such as Michigan.  *See, e.g.*, "Michigan Tells Gay Couples Their Marriages Basically 'Never Existed,'" Huffingtonpost.com, Nov. 17, 2014, available at http://www.huffingtonpost.com/2014/11/17/michigan-gay-marriage-rights-bill-schuette-brief_n_6171250.html (describing separate lawsuit filed by same-sex couples, married in Michigan prior to the Sixth Circuit's decision in *Deboer*, whose marriages are now considered null and void by the State of Michigan).

reasons for granting a temporary stay to permit the state to seek relief

from the Tenth Circuit, primarily because of the threat of harm to

same-sex couples like the individual Plaintiffs here:

> Exercising its discretion, the Court will order a temporary stay to
> allow Defendants time to seek relief from the Tenth Circuit. The
> Court is sympathetic to the mounting irreparable harms faced by
> Plaintiffs. However, the many changes that result from this
> ruling are very serious and deserve as much finality as the Court
> can guarantee. Given the important and fundamental issues
> apparent in this case, it is in the litigants' and public's best
> interests to ensure the correct decision is rendered. It would only
> cause a great deal of harm and heartache if this Court allowed
> same-sex marriage to proceed immediately, only to have a
> reviewing court later nullify this decision (and with it, the same-
> sex marriages occurring in the interim). The Court understands
> that every day where same-sex couples are denied their
> constitutional rights is another day filled with irreparable harm.
> But it is at least equally important that all same-sex marriages
> carry the same prominence and finality that attend opposite-sex
> marriage, including the various obligations and liabilities
> incumbent with the marital relationship.

*Guzzo*, 2014 WL5317797, at *9 (internal citations omitted). *See also*

*Bourke*, 996 F. Supp. 2d at 557-58 ("It is best that these momentous

changes occur upon full review, rather than risk premature

implementation or confusing changes. That does not serve anyone

well").

Mississippi's traditional marriage laws are not depriving same-

sex couples of any cognizable "right" that heretofore existed.  The only harm that would result to the Campaign and same-sex couples from a stay would be a relatively short continued delay in the exercise of a newly-minted right to same-sex marriage.

## IV.  A STAY IS IMPERATIVE TO PROTECT THE PUBLIC INTEREST

### A.    There is a Strong Public Interest in the Stability of Marriage Laws

The strong public interest in the stability of marriage laws warrants a stay:

> There is a substantial public interest in implementing this decision just once – in not having, as some states have had, a decision that is on-again, off-again.  This is so for marriages already entered elsewhere, and it is more clearly so for new marriages.  There is a substantial public interest in stable marriage laws.  Indeed, there is a substantial public interest in allowing those who would enter same-sex marriages the same opportunity for due deliberation that opposite sex couples routinely are afforded.  Encouraging a rush to the marriage officiant, in an effort to get in before an appellate court enters a stay, serves the interests of nobody.

*Brenner v. Scott*, 999 F. Supp. 2d 1278, 1291-92 (N.D. Fla. Aug. 21, 2014) (staying effect of preliminary injunction "for long enough to provide reasonable assurance that the opportunity for same-sex marriages in Florida, once opened, will not again close").

The public interest would be best served by ensuring that same-sex marriages carry the same weight and finality that attend opposite-sex marriage, which would also protect same-sex couples from harm, especially in light of the fact that this Court is prepared to act on this issue.

**B.    This Court Is Already Poised to Resolve the Same-Sex Marriage Issues Raised by the Campaign**

The current legal landscape makes a stay imperative to protect the public interest.  The Campaign has not advanced any new or novel legal theories, but instead has merely repackaged arguments previously made in challenges to same-sex marriage laws in other states, both in this circuit and nationally.

The same issues raised by the Campaign in this action have already been raised in the pair of Texas and Louisiana lawsuits which this Court is poised to resolve:  *Cleopatra DeLeon, et al. vs. Rick Perry, et al.*, No. 14-50196 (5th Cir. filed Mar. 1, 2014) and *Jonathan Robicheaux, et al. vs. James Caldwell, et al.*, No. 14-31037 (5th Cir. filed Sept. 5, 2014).  As the law of the circuit regarding legality of traditional marriage laws will be resolved in the very near future, the

19

Campaign has not presented any issues which require such immediate and extraordinary relief that a stay should be denied.

Moreover, because of the decisions of the district courts in the Texas and Louisiana cases, to date no same-sex marriages have been permitted to occur within this circuit.  *See DeLeon v. Perry*, 975 F. Supp. 2d 632 (W.D. Tex. Feb. 26, 2014) (striking down state prohibition on same sex marriage, but staying the effect of order pending appeal to "prevent any legal and practical complications."); *Robicheaux v. Caldwell*, 2 F. Supp. 3d 910 (E.D. La Sept. 3, 2014) (upholding Louisiana's ban on same sex marriage).  The fact that the *Robicheaux* plaintiffs have petitioned for certiorari before judgment, and that the *DeLeon* plaintiffs have asked the Texas district court to lift the stay in that case reflects the need for this Court to enter a stay to maintain consistency and order throughout the Circuit.

WHEREFORE, PREMISES CONSIDERED, the State respectfully requests that the Court enter an order, no later than December 8, 2014, staying the effect of the preliminary injunction entered by the district court on November 25, 2014, pending the final resolution of this appeal

Respectfully submitted, this the 26th day of November, 2014.

20

PHIL BRYANT, in his official capacity
as Governor of the State of
Mississippi, and JIM HOOD, in his
official capacity as Mississippi
Attorney General

BY:   JIM HOOD, ATTORNEY GENERAL

By:   s/Paul Barnes_____
      Justin L. Matheny
      Paul E. Barnes
      Special Assistant Attorneys General
      STATE OF MISSISSIPPI
      OFFICE OF THE ATTORNEY GENERAL
      Post Office Box 220
      Jackson, MS   39205
      Telephone: (601) 359-3680

      *Counsel for Defendants-Appellants
      Phil Bryant, in his official capacity as
      Governor of the State of Mississippi,
      and Jim Hood, in his official capacity
      as Mississippi Attorney General*

## CERTIFICATE OF CONFERENCE

On November 26, 2014, the undersigned consulted with counsel for the Plaintiffs-Appellees who indicated via email that they oppose this motion and intend to file an opposition.

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that on November 26, 2014, this motion was transmitted to the Clerk of the United States Court of Appeals for the Fifth Circuit via the Court's CM/ECF document filing system after complying with the requirements for emergency motions in 5th Cir. R. 27.3, and that this motion complies with the requirements of 5th Cir. R. 27.4, , Fed. R. App. P. 27(d), Fed. R. App. P. 32(a), and 5th Cir. R. 32.

The undersigned further certifies that: (1) any required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; the electronic submission is an exact copy of the paper document as required by 5th Cir. R. 25.2.1.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been filed electronically with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action.  I further certify that in light of the necessitous time frame and urgent nature of the relief requested herein, I have served copies of the foregoing document on all counsel of record who have entered an appearance in the district court via email.

THIS the 26th day of November, 2014.

s/Paul Barnes
Paul E. Barnes

22