IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CLEOPATRA DE LEON, NICOLE DIMETMAN, VICTOR HOLMES, and MARK PHARISS | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 5:13-cv-982-OLG |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, KEN PAXTON, in his official capacity as Texas Attorney General, GERARD RICKHOFF, in his official capacity as Bexar County Clerk, and KIRK COLE, in his official capacity as interim Commissioner of the Texas Department of State Health Services | § § § § § § § § § § § | |
| Defendants. | § | |

### JOHN ALLEN STONE-HOSKINS' EMERGENCY MOTION TO INTERVENE AND FOR CONTEMPT

Intervenor John Allen Stone-Hoskins ("John") files this Motion to Intervene and for Contempt (the "Contempt Motion") and shows the Court the following in support:

*Preliminary Statement*

Intervenor John Allen Stone-Hoskins invokes this Court's jurisdiction to enforce the permanent injunction it entered less than a month ago specifically barring Ken Paxton, Texas Attorney General, and Kirk Cole, Interim Commissioner of the Texas Department of State Health Services, from enforcing Texas laws restricting recognition to same-sex marriages. This Court held that those laws violate the Fourteenth Amendment of the United States Constitution, and the

1

Fifth Circuit affirmed this Court's decision after the Supreme Court issued its decision in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). [Docket No. 98, the "Order"]. Cole has failed and refused to comply with the permanent injunction by refusing John's request that the State amend the death certificate of his late husband James to reflect that John is his surviving spouse. By denying John relief that is routinely afforded surviving spouses of opposite-sex marriages, both Paxton and Cole are in contempt of this Court's permanent injunction.

The need for relief is urgent. John is terminally ill. Doctors estimate he has no more than 45 to 60 days to live. Before he received this grim prognosis, John was married to James Stone-Hoskins. James died intestate in January 2015. At the time of his death, Defendants refused to list John as his surviving spouse on James' death certificate because, although John and James had been lawfully married in New Mexico, they were both men. John filed all of the necessary paperwork to amend James' death certificate to list John as his spouse after this Court lifted the stay of its preliminary injunction, and has repeatedly asked the State to amend the certificate on numerous occasions since. The relief John seeks has been routinely and promptly afforded surviving spouses of opposite-sex marriages.

In response to John's request, the Department initially advised him to wait until they could "determine what, if any, changes are needed to the death registration and/or amendment process." On Monday, the Department advised that it would refuse to amend absent a court order compelling it to do so—even though such an order has *already been entered* by this Court! John urges the Court to act before he dies, so that he can make his final arrangements and enjoy the dignity of being listed on his late husband's death certificate. No less is required under the United States Constitution and this Court's order of permanent injunction.

To remedy Paxton and Cole's continued failure to comply with the Court's injunction, John Stone-Haskins requests that the Court permit him to intervene in this action, hold Defendants in contempt, and instruct Defendants immediately to issue a revised death certificate for his deceased spouse, James Stone-Haskins.

## FACTUAL BACKGROUND

John and James were loving partners for more than 10 years. *See* Declaration of John Allen Stone-Hoskins in Support of his Emergency Motion to Intervene and for Contempt, *attached hereto as* **Exhibit A** (the "Declaration") ¶ 2. Residents of Conroe, Texas, they legally married in New Mexico in August of 2014. *Id.* ¶¶ 1-2. Shortly thereafter, in January 2015, James died. *Id.* ¶ 3. When James died, the State of Texas issued a death certificate listing James as "single." On the death certificate, the State of Texas did not recognize John as James's husband, but rather as his "significant other." *Id.* ¶ 4. James did not have a will when he died. *Id.* ¶ 5.

One day after the Supreme Court's *Obergefell* decision, on June 27, 2015, John began requesting that the State of Texas correct James's death certificate to recognize that the two were legally married and to recognize him as James's spouse. *Id.* ¶ 6. John filled out all necessary paperwork required by the State of Texas to correct a death certificate error (Form VS-172) and filed the paperwork with the Texas Department of State Health Services (the "DSHS") pursuant to section 181.30 of the Texas Administrative Code. *Id.* ¶ 6.

Although John has made numerous attempts to have James's death certificate corrected to reflect John as James's surviving spouse, Defendants refuse to make this correction—thus refusing to recognize John and James's marriage. *See id.* ¶¶ 6, 7. Instead, the DSHS replied to John with the following statement (the DSHS provides a similar response to any and all inquiries about correcting Texas-issued death certificates that fail to recognize a lawfully married same-sex spouse):

> The Department of State Health Services (DSHS) Vital Statistics Unit and DSHS Office of General Counsel, in consultation with the Office of the Attorney General, is reviewing the court's ruling to determine what, if any, changes are needed to the death registration and/or amendment process. Until the ruling is fully reviewed, we will not be able to know the impact if any, of the process to file or amend death certificates. We will keep your documentation in a pending file and will advise you once a determination is made.

*Id.* ¶ 6. The DSHS has since informed John that it will not amend James' death certificate absent a court order.

John has been diagnosed with terminal cancer and his doctors estimate that he has, at most, 45-60 days to live. *Id.* ¶ 9. In contemplation of his impending death, John wishes to plan for the passing of his estate upon his death. *Id.* ¶ 10. He also wishes to have the enjoy of having his marriage to James recognized on James' death certificate. *Id.* ¶ 11. John cannot do this, however, because Defendants refuse to recognize John and James's lawful out-of-state marriage and refuse to correct James's death certificate. Thus, Defendants continue to prevent John from gaining title to James's estate as his surviving spouse, and continue to deprive him the dignity guaranteed by the Fourteenth Amendment. *Id.* ¶¶ 8, 10, 11.

## I.  MOTION TO INTERVENE

Federal Rule of Civil Procedure 24(b)(1)(B) permits a party to permissively intervene where a third party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Whether to allow a permissive intervention is within a court's discretion, *United States v. Texas*, 457 F.3d 472, 476 (5th Cir. 2006), and "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Plaintiffs in this suit sued the State of Texas for violation of their Fourteenth Amendment Due Process and Equal Protection Rights because the Texas Constitution and Texas statutes denied them of the opportunity to marry and deprived them of the recognition of their out-of-

4

state marriages. Likewise, John, as an intervenor, is seeking to intervene in this case because he is being deprived of his Due Process and Equal Protection rights because the State of Texas fails to recognize his valid marriage to James. Accordingly, John shares a common question of law with the Plaintiffs in this case. *See* Fed. R. Civ. P. 24(b)(1)(B). Similarly, like Plaintiffs, this Court has jurisdiction over John's claim because his claim raises questions under the Constitution of the United States.

John's intervention will not unduly delay or prejudice the adjudication of the original parties' rights because this case is closed and final judgment rendered. *Phillips v. Goodyear Tire & Rubber Co.*, No. 02-1642B, 2007 WL 3245015, at *2 (S.D. Cal. 2007) ("As Magistrate Judge Stormes correctly noted, the [] case is closed so delay is not an issue.").

The Fifth Circuit's opinion in *United States v. Texas* is particularly instructive. There the Fifth Circuit allowed a party to intervene in a long-since administratively closed case to enforce a district court's desegregation order:

> [Intervenor defendant] also challenges the district court's reopening of an administratively closed case and its allowance of [Intervenor's] motion to intervene to enforce [the desegregation order]. Because a district court may reopen an administratively closed case *sua sponte* . . . we find no abuse of discretion in the district court's timing and decision to reopen the case. Likewise, the court did not abuse its discretion in permitting [Intervenor] to intervene, as Hearne challenged [Defendant's] action under [the desegregation order], which is a still-effective decree.

*Texas*, 457 F.3d at 476.

Accordingly, this Court should allow John to permissively intervene in this case to enforce this Court's Order pursuant to the Fourteenth Amendment of the United States Constitution and the Supreme Court's *Obergefell* decision.

## II. MOTION FOR CONTEMPT

On June 26, 2015, as a result of the Supreme Court's *Obergefell* decision, this Court lifted the stay on the preliminary injunction it previously granted Plaintiffs, which enjoined Defendants from enforcing any of Texas' laws banning same-sex marriages or refusing to recognize lawful, out-of-state same sex marriages. [Docket Nos. 73, 96.] Thereafter, the Court entered the Order permanently enjoining Defendants:

> Any Texas law denying same-sex couples the right to marry, including Article I, §32 of the Texas Constitution, any related provisions in the Texas Family Code, and any other laws or regulations prohibiting a person from marrying another person of the same sex *or recognizing same-sex marriage*, violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 . . . . Defendants are permanently enjoined from enforcing Texas's laws prohibiting same-sex marriage . . . .

[Docket No. 98 (emphasis added)].

Despite this Court's Order, Defendants continue to refuse to recognize same-sex marriages. Specifically, the DSHS continues to refuse to correct James's death certificate to recognize James and John's lawful same-sex marriage. This directly violates this Court's Order enjoining Defendants from enforcing Texas's laws prohibiting same-sex marriage and commanding it to recognize same-sex marriages performed in other states, a constitutional right expressly granted to John and all same-sex married couples under the Fourteenth Amendment of the United States Constitution and the Supreme Court's *Obergefell* decision.

Furthermore, while the Defendants have stated that they are reviewing the *Obergefell* decision to determine what changes need to be made to state-issued documents, they have merely promised to make decisions in the "coming weeks." John, however, does not have weeks to wait and see what determination Defendants make regarding death certificates. He has been told he has 45-60 days to live; and he may die sooner than that. *See* Declaration ¶ 9. John has the

constitutional right to have his marriage recognized by the State of Texas, and the recognition of their marriage in James's death certificate falls squarely and clearly within that right, as contained in this Court's Order.

### *Conclusion*

Intervenor John Allen Stone-Hoskins requests that the Court order Defendants Ken Paxton, in his official capacity as Texas Attorney General, and Kirk Cole, in his official capacity as interim Commissioner of the DSHS, to appear at a time and place to be set by the Court and that upon that hearing the Court find that they should be held in contempt of court and accordingly punished for the contemptuous acts set out above. Furthermore, John requests that the Court order the DSHS to immediately correct the death certificate of James H. Stone-Hoskins to state that John is the surviving spouse of James, and in so doing, recognize John and James's legal out-of-state marriage.

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Daniel McNeel Lane, Jr.*
    Daniel McNeel Lane, Jr. (SBN 00784441)
    nlane@akingump.com
    Matthew E. Pepping (SBN 24065894)
    mpepping@akingump.com
    300 Convent Street, Suite 1600
    San Antonio, Texas 78205
    Phone: (210) 281-7000
    Fax: (210) 224-2035

    Andrew F. Newman (SBN 24060331)
    anewman@akingump.com
    1700 Pacific Ave., Suite 4100
    Dallas, Texas 75201
    Phone: (214) 969-2800
    Fax: (214) 969-4343

    Attorneys for Intervenor

## CERTIFICATE OF SERVICE

I certify that on August 5, 2015, I served all parties a copy of the foregoing document via the Court's ECF service.

By: */s/ Daniel McNeel Lane, Jr.*
Daniel McNeel Lane, Jr.

## CERTIFICATE OF CONFERENCE

I certify that on August 4, 2015, counsel for Intervenor conferred with all parties of record. Defendants Abbott, Paxton, and Cole oppose the relief requested in this motion. Defendant Rickhoff advised that he takes no position on the relief requested.

By: */s/ Daniel McNeel Lane, Jr.*
Daniel McNeel Lane, Jr.